CHANDLER, Justice,
for the Court.
¶ 1. Don Sauvage and Gene J. Sauvage (the Sauvages), individually, and as the personal representatives of the estate of Aranka Abadie Sauvage (Aranka), filed a wrongful-death lawsuit in the Circuit Court of Hinds County against Meadow-crest Living Center, LLC (Meadowcrest), Steve Yancovich, Transition Health Services of Louisiana, LLC, Robert Bates, New Orleans Tours, Inc., James E. Smith, Jr., and John Does 1-25. The complaint alleged that Meadowcrest was a nursing home in the City of Gretna, Louisiana, and that, on August 28, 2005, the eve of Hurricane Katrina, Meadowcrest evacuated its elderly residents to a church camp in Raymond, Mississippi. The complaint alleged that Aranka was one of the evacuated residents, and that she died on September 1, 2005, as the result of inadequate medical care at the church camp. . The Sauvages filed an almost identical action in Jefferson Parish, Louisiana. The circuit court dismissed the complaint based on lack of personal jurisdiction over the defendants, or alternatively, forum, non conveniens, and the Sauvages appeal from the dismissal.
*591 ¶ 2. On appeal, the Sauvages argue that the circuit court erred by dismissing the case for lack of personal jurisdiction or forwm non conveniens. The defendants address these issues and make the additional argument that dismissal was proper because the pendency of an action is a bar to a second action involving the same parties and subject matter. We find that under our wrongful-death statute and interpretive caselaw, the Mississippi action was properly dismissed due to the pen-dency of the prior-filed Louisiana wrongful-death action. Miss.Code Ann. § 11-7-13 (Rev.2004). Therefore, we affirm.

FACTS

A. The complaint

¶ 3. The Sauvages filed the complaint on October 3, 2007, asserting their status as Aranka’s grandchildren and the personal representatives of her estate. The complaint identified the individual defendants as: Meadowcrest Living Center, LLC, a Louisiana limited-liability company doing business in Gretna in Jefferson Parish, Louisiana; Steve Yancovieh, the signatory and administrator of Meadowcrest; Transition Health Services of Louisiana, LLC, a Texas limited-liability company that managed Meadowcrest Living Center; Robert R. Bates, the corporate president of Transition Health Services; New Orleans Tours, Inc., which transported the elderly residents to the church camp in Raymond, Mississippi; James E. Smith, a representative of New Orleans Tours, and John Does 1-25.
¶ 4. The Sauvages averred that Aranka was a Louisiana resident at the time of her death, and that the Sauvages and all the defendants were Louisiana residents. The Sauvages claimed that on August 25, 2005, Robert Bates became aware that Hurricane Katrina was gathering strength over the Gulf of Mexico and it had the ability to impact or destroy Meadowcrest’s nursing home, yet Meadowcrest made no attempt to evacuate its residents until August 28, 2005, when the hurricane was less than twenty-four hours from landfall. The Sau-vages claimed that, pursuant to Meadow-crest’s evacuation plan, 102 elderly, bedridden residents were transported in three tour buses to the United Pentecostal Church (UPC) Camp located in Raymond, Mississippi, a location which actually was in the path of Hurricane Katrina. According to the Sauvages, the UPC Camp consisted of a “large metal building with a concrete floor.” Hurricane Katrina struck the area early the next day, on August 29, 2005. The Sauvages claimed that in Hurricane Katrina’s wake, the UPC Camp lost electrical power, and the building in which Aranka and the others were confined became “very hot, humid[,] and smelled of human waste.” They claimed that Aranka and at least one other elderly resident died as a result of these conditions.
¶ 5. The Sauvages asserted negligence claims against all defendants, alleging that confining Aranka to the metal building without adequate medical care proximately caused Aranka’s death, and that the defendants knew or should have known that the UPC camp was unfit housing for the elderly residents. They claimed that the defendants were negligent in failing to formulate and implement a contingency plan for the evacuation, despite advance knowledge that the UPC camp was in the path of Hurricane Katrina. They claimed that the defendants’ actions breached the standard of reasonable care. They further claimed New Orleans Tours was negligent in failing to ensure the residents were transported to a proper and safe location. The Sauvages also. asserted breach-of-contract claims against Meadowcrest and New Orleans Tours. The Sauvages asserted that the defendants’ conduct constituted gross *592 negligence and willful and wanton disregard for Aranka’s welfare, and they requested compensatory and punitive damages.

B. Subsequent proceedings

¶ 6. On December 14, 2007, Mea-dowcrest, Yancovich, Transition, and Bates answered and moved to dismiss for reasons including lack of personal jurisdiction and forum non conveniens.[1] On January 3, 2008, they filed a separate “Motion to Dismiss for Lack of Personal Jurisdiction or Based on Forum Non Conveniens.” These defendants asserted that on January 27, 2006, the Sauvages had filed another, similar action that was pending in Jefferson Parish, Louisiana. They attached a copy of the complaint in the Jefferson Parish action, in which the Sauvages asserted wrongful-death claims against Mea-dowcrest and Transition based upon the same conduct described in the Mississippi complaint. They requested class-certification status, to include all Meadowcrest residents who were present on August 28, 2005, who suffered damages, including those who were evacuated and transported to Mississippi.
¶ 7. The defendants asserted a lack of personal jurisdiction, noting that no party to this case is a Mississippi resident and all allegedly negligent decisions concerning the evacuation occurred in Louisiana. Alternatively, the defendants argued that the case should be dismissed under the doctrine of forum non conveniens because Mississippi is an inconvenient forum for trial, and Jefferson Parish is the more appropriate forum.
¶ 8. The Sauvages filed a response, asserting that personal jurisdiction was proper under Mississippi’s long-arm statute, and that Mississippi’s assertion of jurisdiction over the defendants comported with due process. In a response to the defendants’ rebuttal, they additionally argued that the case should not be dismissed under the doctrine of forum non conve-niens. At the hearing on the motion to dismiss, the Sauvages stated that if the circuit court denied the motion to dismiss and allowed the case to proceed, they would dismiss the Jefferson Parish action.
¶ 9. The circuit court dismissed the complaint on July 11, 2008. The circuit court found that Mississippi’s long-arm jurisdiction did not extend to the defendants because “the torts alleged, which concerned lack of reasonable care as to planning and/or carrying out evacuation plans, occurred primarily in the State of Louisiana.” The court further found that, even if jurisdiction were proper under the long-arm statute, the defendants lacked minimum contacts with the State of Mississippi and assertion of jurisdiction over them would be unconstitutional. Alternatively, the circuit court dismissed the action under the doctrine of forum non conveniens because Louisiana was a more appropriate forum. In support of this finding, the court noted that the Sauvages previously *593 had commenced the Jefferson Parish action concerning the same set of facts, that all defendants are nonresidents of Mississippi, that Meadowcrest is a Louisiana LLC doing business in Louisiana, and that the evacuation plan was put into effect in Louisiana. The trial court denied the Sau-vages’ motion for reconsideration.
¶ 10. The Sauvages have timely appealed, arguing that the circuit court erred by dismissing their complaint.

DISCUSSION

¶ 11. The parties’ arguments primarily focus upon the circuit court’s alternative grounds for dismissal, lack of personal jurisdiction and forum non conveniens. The defendants also argue that, although the circuit court did not find that the prior Louisiana lawsuit was a bar to this Mississippi lawsuit, the court correctly dismissed this lawsuit because the pendency of a prior action is a bar to a second action involving the same parties and the same subject matter. Although we adopt a somewhat different analysis than that promulgated by the defendants, we find this issue to be dispositive of this appeal. Therefore, we do not discuss the issues raised by the Sauvages.
¶ 12. The defendants cite Abiaca Drainage District of Leflore, Holmes & Carroll Counties v. Albert Theis & Sons, Inc., 185 Miss. 110, 187 So. 200, 201 (1939), in which the Court held: “[t]he pendency of a prior suit between the same litigants and involving the same subject matter constitutes a bar unless adequate relief is not attainable in the prior suit.” Abiaca Drainage concerned competing lawsuits involving the same parties and subject matter that were filed in chancery court and in circuit court, respectively. The case of Smith v. Holmes, 921 So.2d 283, 286 (Miss.2005), states that Abiaca articulated the rule for priority jurisdiction between courts of concurrent jurisdiction. This rule provides that “a second action based on the same cause will generally be abated where there is a prior action pending in a court of competent jurisdiction within the same state or jurisdictional territory, between the same parties, involving the same or substantially the same subject matter and cause of action, and in which prior action the rights of the parties may be determined and adjudged.” Id. (emphasis added) (quoting Long v. McKinney, 897 So.2d 160, 172 (Miss.2004)). “It is fundamental that a plaintiff is not authorized simply to ignore a prior action and bring a second, independent action on the same state of facts while the original action is pending.” Id. (quoting Lee v. Lee, 232 So.2d 370, 373 (Miss.1970)).
¶ 13. In Long, this Court discussed the rule of priority jurisdiction in the context of wrongful-death suits, which are governed by Mississippi Code Section 11-7-13. Long, 897 So.2d at 171-73; Miss.Code Ann. § 11-7-13 (Rev.2004). Section 11-7-13 provides:
Whenever the death of any person or of any unborn quick child shall be caused by any real, wrongful or negligent act or omission, or by such unsafe machinery, way or appliances as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof, or whenever the death of any person or of any unborn quick child shall be caused by the breach of any warranty, express or implied, of the purity or fitness of any foods, drugs, medicines, beverages, tobacco or any and all other articles or commodities intended for human consumption, as would, had the death not ensued, have entitled the person injured or made ill or damaged thereby, to maintain an action and recover damages in respect thereof, *594 and such deceased person shall have left a widow or children or both, or husband or father or mother, or sister, or brother, the person or corporation, or both that would have been liable if death had not ensued, and the representatives of such person shall be liable for damages, notwithstanding the death, and the fact that death was instantaneous shall in no case affect the right of recovery. The action for such damages may be brought in the name of the personal representative of the deceased person or unborn quick child for the benefit of all persons entitled under the law to recover, or by widow for the death of her husband, or by the husband for the death of the wife, or by the parent for the death of a child or unborn quick child, or in the name of a child, or in the name of a child for the death of a parent, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or a brother for the death of a brother, or all parties interested may join in the suit, and there shall be but one (1) suit for the same death which shall ensue for the benefit of all'parties concerned, but the determination of such suit shall not bar another action unless it be decided on its merits. Except as otherwise provided in Section 11-1-69, in such action the party or parties suing shall recover such damages allowable by law as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.
Miss.Code Ann. § 11-7-13 (Rev.2004) (emphasis added). In Long, the Court noted that the statutory language allows but “one suit” for the same death, for the benefit of all concerned parties. Id. at 171-72. The Court observed that competing wrongful-death suits usually will involve the same parties and subject matter; therefore, “a logical extension of the principle of priority jurisdiction requires that all claims for the wrongful death of a person be litigated in the same suit and in the same court.” Id. at 172. Accordingly, the Court held “that the first court to properly take jurisdiction of a wrongful-death action in our state courts shall, so long as that action is pending, have exclusive jurisdiction, and any other subsequently-filed action for the same death shall be of no effect.”[2] Id. at 173.
¶ 14. Long applies when two wrongful-death suits are currently pending at the time the trial court decides a motion to dismiss. Briere v. South Cent. Reg'l Med. Ctr., 3 So.3d 126, 129 (Miss.2009). In Briere, the plaintiff filed a wrongful-death action against Cottonwood Manor nursing home, and then filed a second wrongful-death action against South Central Regional Medical Center (SCRMC). Id. at 127. SCRMC moved to dismiss on the basis that the pending action against Cottonwood barred a second wrongful-death lawsuit. Id. at 128. At the hearing on the motion to dismiss, the plaintiff voluntarily dismissed the suit against Cottonwood. Id. However, the trial court subsequently granted SCRMC’s motion to dismiss the second lawsuit because it had been filed while another suit for the same death was pending. Id. This Court reversed the dismissal of the second suit. Id. at 129. We noted that under Section 11-7-13, a second wrongful-death suit is not barred if an initial action was dismissed without a decision on the merits. Id. We clarified Long *595 and held that a second suit may not be dismissed just because, at some point, it was pending at the same time as a previously-filed suit. Id. Because the first suit was dismissed without a decision on the merits, the second suit was the only wrongful-death suit pending when the trial court addressed SCRMC’s motion to dismiss, and it was not subject to dismissal. Id.
¶ 15. As in Long and Briere, in this case, the Court is confronted with two lawsuits for the same death. But unlike in Long and Briere, the instant lawsuits were filed in two different states. Arguably, the rule articulated in Long that the court that entertains the first-filed action “shall have exclusive jurisdiction” applies only if the first-filed action was brought “in our state courts.” Long, 897 So.2d at 173. In fact, in Brown v. Brown, 493 So.2d 961, 963 (Miss.1986), this Court stated “that there is another action regarding the same subject matter pending in the courts of a sister state poses no jurisdictional obstacle to a court of this state of otherwise competent jurisdiction hearing and adjudging the matter in controversy.” However, Brown involved competing state-court divorce proceedings, not competing wrongful-death suits. Id. at 962.
¶ 16. At the time the Sauvages filed their wrongful-death suit in Hinds County, another suit for the same death was pending in Louisiana. The Louisiana action remained pending at the time the trial court determined the motion to dismiss. Under Section 11-7-13, there shall be one suit for the same death; under Long, all claims must be joined in that single action. Long, 897 So.2d at 174; Miss. R. Civ. P. 19; Miss. Code Ann. § 11— 7-13 (Rev.2004). These fundamental procedural rules for wrongful-death litigation in this state would be thwarted if our courts entertained a wrongful-death action in Mississippi, while a previously-filed suit for the same death was pending in another state. We hold that a wrongful-death suit filed in Mississippi is subject to dismissal during the pendency of a suit for the same wrongful death in a sister state.[3] Accordingly, we affirm the dismissal of the Sauvage’s complaint.
¶ 17. AFFIRMED.
CARLSON, P.J., DICKINSON, RANDOLPH AND PIERCE, JJ., CONCUR. LAMAR, J., CONCURS IN RESULT ONLY. DICKINSON, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J.; GRAVES, P.J., JOINS IN PART.

. New Orleans Tours and James E. Smith, Jr., did not file an answer or otherwise appear in the case. The circuit court issued summonses for all defendants, but it has no record of summons returns for any defendant. Because a person named in a complaint does not become a party until served with process, New Orleans Tours and James E. Smith, Jr., are not parties remaining before the circuit court. Stanley v. Allstate Ins. Co., 465 So.2d 1023, 1025 (Miss.1985). Defendants Mea-dowcrest, Yancovich, Transition, and Bates waived the defenses of insufficiency of service of process and insufficiency of process by omitting these defenses from their answer and motion to dismiss. Miss. R. Civ. P. 12(h)(1). Therefore, the order dismissing Meadowcrest, Yancovich, Transition, and Bates fully adjudicated the case as to all parties and it was a final, appealable judgment. Miss. R. Civ. P. 54(b), 58.

. This Court also has held that Section 11-7-13 and Long prohibit the severance of a wrongful-death lawsuit. Adams v. Baptist Mem’l Hosp.-Desoto, Inc., 965 So.2d 652 (Miss.2007).

. Our holding today rests upon the wrongful-death statute's one-suit requirement and the procedural rules this Court has developed to manage wrongful-death litigation consistent with that requirement. This decision does not erode the general rule that a previously-filed action in a sister state is no bar to an action in Mississippi.