# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01423-SCT

*ESTATE OF RICHARD B. DAVIS, BY AND
THROUGH ITS EXECUTRIX, JANICE Y. DAVIS*

*v.*

*DARRELL N. BLAYLOCK, MD d/b/a BLAYLOCK
MEDICAL CLINIC, LLC*


| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/2015 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LEVI BOONE, III |
| | KELVIN CEDELL PULLEY |
| ATTORNEYS FOR APPELLEE: | JACOB O. MALATESTA |
| | L. CARL HAGWOOD |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 01/05/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


## CONSOLIDATED WITH

## NO. 2015-CA-01425-SCT

*ESTATE OF RICHARD B. DAVIS BY AND
THROUGH ITS EXECUTRIX JANICE Y. DAVIS*

*v.*

*DELTA REGIONAL MEDICAL CENTER*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/2015 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LEVI BOONE, III |
| | KELVIN CEDELL PULLEY |

ATTORNEYS FOR APPELLEE: P. SCOTT PHILLIPS
GREGORY WEATHERS VIRDEN, JR.
NATURE OF THE CASE: WRONGFUL DEATH
DISPOSITION: AFFIRMED - 01/05/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


## CONSOLIDATED WITH

## NO. 2015-CA-01427-SCT

*ESTATE OF RICHARD B. DAVIS, BY AND
THROUGH ITS EXECUTRIX, JANICE Y. DAVIS*

*v.*

*DELTA REGIONAL MEDICAL CENTER*

DATE OF JUDGMENT: 08/13/2015
TRIAL JUDGE: HON. W. ASHLEY HINES
COURT FROM WHICH APPEALED: WASHINGTON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: LEVI BOONE, III
KELVIN CEDELL PULLEY
ATTORNEYS FOR APPELLEE: P. SCOTT PHILLIPS
GREGORY WEATHERS VIRDEN, JR.
NATURE OF THE CASE: WRONGFUL DEATH
DISPOSITION: AFFIRMED - 01/05/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     This Court has held "that the first court to properly take jurisdiction of a wrongful death action in our state courts shall, so long as the action is pending, have exclusive jurisdiction, and any other subsequently-filed action for the same death shall be of no effect."[1]  Despite this clear holding, Janice Y. Davis (Davis)—after filing an action for the wrongful death of her father, Richard B. Davis, and while that action was pending—filed three additional, separate wrongful-death actions, two of which were against the same defendant.  Because these three subsequent actions were of "no effect," they were properly dismissed.  Thus, we affirm the judgments dismissing the three subsequently filed wrongful-death actions.

**Background Facts and Procedural History**

¶2.     This appeal is a consolidation of three appeals, one from each of the subsequently filed wrongful-death lawsuits that was dismissed by the circuit court.

**I.     Davis's Four Suits**

*A.     Lawsuit 1 versus Dr. Barber*

¶3.     Davis filed her first wrongful-death suit against William H. Barber, M.D., on November 4, 2014, in the Washington County Circuit Court.  ***Estate of Richard B. Davis v. William H. Barber, MD***, Washington County Cause No. 2014-0134 (Lawsuit 1).  She claimed Dr. Barber's medical negligence caused her father Richard's death on September 21, 2013.  Lawsuit 1 is not part of this appeal.

*B.     Lawsuit 2 versus Dr. Blaylock*

---

[1] ***Long v. McKinney***, 897 So. 2d 160, 173 (Miss. 2004).

¶4. Fifteen days later, on November 19, 2014, she filed another suit based on her father's wrongful death. *Estate of Richard B. Davis v. Darrell N. Blaylock, MD d/b/a Blaylock Med. Clinic*, Washington County Cause No. 2014-0139 (Lawsuit 2). This time she sued Darrell N. Blaylock, M.D., alleging his medical negligence caused her father's death.

C. *Lawsuit 3 versus DRMC*

¶5. The same day she filed Lawsuit 2, she filed a third wrongful-death lawsuit against Delta Regional Medical Center (DRMC) "based upon the separate negligence committed by Delta Regional Medical Center." *Estate of Richard B. Davis v. Delta Reg'l Med. Ctr.*, Washington County Cause No. 2014-0140 (Lawsuit 3).

D. *Lawsuit 4 versus DRMC*

¶6. Then on December 10, 2014, she filed a fourth wrongful-death suit, also against DRMC, "arising from alleged medical and nursing negligence relating to care provided to Richard B. Davis, Sr.[,] by Darrell N. Blaylock, M.D. and the nursing staff of Delta Regional Medical Center." *Estate of Richard B. Davis v. Delta Reg'l Med. Ctr.*, Washington County Cause No. 2014-0146 (Lawsuit 4).

**II. Motions to Dismiss**

¶7. Simultaneously with its answers, DRMC filed motions to dismiss both Lawsuit 3 and Lawsuit 4. Because Davis already had filed Lawsuit 1, which was still pending, DRMC argued Lawsuits 3 and 4 had to be dismissed.

¶8. Davis responded by filing a "Motion to Combine and Amend Complaint" in both Lawsuit 3 and Lawsuit 4. In her motions, Davis acknowledged she had filed four separate

wrongful-death lawsuits. And she attached to her motions a proposed First Amended Complaint that named Dr. Barber, Dr. Blaylock, and DRMC as defendants.

¶9. While DRMC's and Davis's motions were pending, Dr. Blaylock moved to dismiss Lawsuit 2. Like DRMC, Dr. Blaylock cited the still-pending Lawsuit 1. While Davis filed a response, she did not file a motion to combine and amend in Lawsuit 2.[2] Nor, apparently, did she file a motion to combine and amend in Lawsuit 1—the first-filed suit.

¶10. The motions to dismiss for all three actions were heard on June 23, 2015 . On August 12, 2015, the trial court entered three separate orders dismissing Lawsuit 2, 3, and 4. Each order gave the same reason for dismissal—

> Based on the decision in **Long**, this Court finds that the first wrongful death action filed for the death of Mr. Davis, **Davis v. Barber**, Washington County cause no. 2014-0134 [(Lawsuit 1)], is the only valid wrongful death case filed. The remaining three cases that were subsequently filed have no effect and shall be dismissed.

See **Long v. McKinney**, 897 So. 2d 160, 173 (Miss. 2004).

¶11. Within ten days of the orders, Davis filed a Motion to Modify Orders and/or for Reconsideration in all three dismissed actions, tolling the time to appeal. See M.R.C.P. 59, M.R.A.P. 4(d). In each motion, Davis cited her motions to combine and amend. While she acknowledged these motions had been denied implicitly when the three actions were dismissed, she asked the court to deny them expressly, so she could appeal the denials. Alternatively, she asked the court to reconsider granting her motions to combine the lawsuits instead of dismissing them.

---

[2] Davis filed a copy of her proposed First Amended Complaint in Lawsuit 2. But this filing was not accompanied by any motion to amend or combine.

¶12. The trial court entered a second order in each case on August 31, 2015. The orders in Lawsuits 3 and 4 expressly denied the motions to combine and amend as moot. The orders further stated that, because *Long* held all subsequently filed wrongful-death suits were of "no effect," the motions filed in these subsequently filed wrongful-death suits also were of no effect. *See Long*, 897 So. 2d at 173. In Lawsuit 2, the court pointed out that no motion to combine and amend had been filed, so there was no pending motion to deny expressly.

### III. Notices of Appeal

¶13. Davis timely appealed the final orders in all three cases. We consolidated the three appeals. In each, Davis the raises the same two issues—

I. Whether the trial court erred by failing to grant Plaintiff's Motion to Combine four separate wrongful death lawsuits that were filed by the same Plaintiffs against different Defendants at different times due to the different noticing requirements of Miss. Code Ann. § 15-1-36 and Miss. Code Ann. § 11-46-1.

II. Whether the trial court erred in its August 31, 2015 order in ruling that Plaintiff's Motion to Combine and Amend Complaint was moot.

### Discussion

### I. The circuit court followed this Court's clear directive in *Long* when it dismissed the subsequently filed wrongful-death suits.

¶14. We begin with Davis's second issue. She claims the trial court erred when it found in its August 31 orders that Davis's Motion to Combine and Amend Complaint was moot.[3]

---

[3] Technically, this issue arises only in Davis's appeal in Lawsuits 3 and 4. The trial court did not deny the motion to combine and amend as moot in Lawsuit 2 because, as the court rightly acknowledged, Davis never filed such motion in the action against Dr. Blaylock. But as this issue goes to the trial court's underlying August 12, 2015 orders dismissing all three suits based on *Long*, the resolution of this issue also affects Davis's appeal of the dismissal of Lawsuit 2.

¶15. To be "moot" is to "hav[e] no practical significance." *Moot*, Black's Law Dictionary 1099 (9th ed. 2009). And here, Davis's motions to combine and amend had no practical significance because they were filed only in subsequently filed wrongful-death suits that were "of no effect." ***Long***, 897 So. 2d at 173, 174.

> A. Under ***Long***, *any subsequently filed wrongful-death lawsuit "shall be of no effect" while the first action is pending.*

¶16. ***Long*** also dealt with multiple wrongful-death suits. There, two sets of wrongful-death beneficiaries filed two different lawsuits based on the death of the same decedent. ***Id.*** at 164. The second set of beneficiaries moved to consolidate their subsequently filed action with the first. ***Id.*** at 165. When their motion was denied, this Court granted an interlocutory appeal. ***Id.*** at 167-68.

¶17. On appeal, we applied "the general rule of priority jurisdiction" to uphold the "one-suit" rule expressed in Mississippi's wrongful-death statute. ***Id.*** at 172; *see* Miss. Code Ann. § 11-7-13 (Supp. 2016). Under the rule of priority jurisdiction, "[i]t is fundamental that a plaintiff is not authorized simply to ignore a prior action and bring a second, independent action on the same state of facts while the original action is pending." ***Id.*** at 172. Stated differently, "the principle of priority jurisdiction is that where two suits between the same parties over the same controversy are brought in courts of concurrent jurisdiction, the court which first acquires jurisdiction retains jurisdiction over the whole controversy to the exclusion or abatement of the second suit." ***Id.***

7

¶18.    We found "that a logical extension of the principle of priority jurisdiction requires that all claims for the wrongful death of a person be litigated in the same suit and in the same court." *Id.* at 172. Thus, we held "that the first court to properly take jurisdiction of a wrongful death action in our state courts shall, so long as the action is pending, have exclusive jurisdiction, and any other subsequently-filed action for the same death shall be of no effect." *Id.* at 173.

¶19.    In this case, the trial court took jurisdiction over Lawsuit 1—to the exclusion of Lawsuits 2, 3, and 4. Thus, we find the trial court properly applied ***Long***'s principle to hold those three subsequently filed actions were "of no effect."

¶20.    On appeal, Davis tries to distinguish ***Long*** by pointing out that ***Long*** dealt with multiple plaintiffs, while here the same plaintiff brought lawsuits against multiple defendants. But we have made no such distinction, enforcing ***Long***'s one-suit rule when the *same plaintiff* has multiple wrongful-death suits pending. ***Sauvage v. Meadowcrest Living Ctr., LLC***, 28 So. 3d 589 (Miss. 2010) (dismissing second-filed wrongful-death suit because same plaintiff had another action pending in Louisiana involving the same death); ***Rose v. Bologna***, 942 So. 2d 1287 (Miss. 2007) (reversing the trial court's decision to sever plaintiff's wrongful-death suit against multiple care providers into three lawsuits); *cf. also* ***Briere v. S. Cent. Reg'l Med. Ctr.***, 3 So. 3d 126 (Miss. 2009) (holding second wrongful-death lawsuit filed by the same plaintiff did not have to be dismissed because her first wrongful-death action against a different defendant was not *currently pending*).

¶21. In fact, in ***Rose***, we reversed the trial court for splitting the wrongful-death action into three suits. ***Rose***, 942 So. 2d at 1290. In that case, the administratrix had filed only one wrongful-death suit against multiple healthcare providers. But the trial court granted two of the defendant doctors' motions to sever and transfer venue, creating three wrongful-death actions. On interlocutory appeal, we reversed. In doing so, we found ***Long*** controlled. "*Adhering to the precedent of **Long*** and determining that Section 11-7-13 applies," this Court "conclude[d] that *there cannot be three separate lawsuits* for the wrongful death of Kimberly Rose." ***Rose***, 942 So. 2d at 1290 (emphasis added). And if there could not be three lawsuits in ***Rose***, there cannot be four lawsuits here.

¶22. So long as Lawsuit 1 was pending—which Davis conceded it was—Davis's "subsequently filed action[s] for the same death shall be of no effect." ***Long***, 897 So. 2d at 173; *see also **Briere***, 3 So. 3d at 129 (clarifying that ***Long*** requires subsequent suits be dismissed when the first suit is still pending).

> B. Under ***Long***, there was nothing to combine.

¶23. Still, Davis contends the proper course was to consolidate her multiple actions. But when faced with a similar request to consolidate in ***Long***, we clearly held that, because any subsequently filed actions are "of no effect and should be dismissed," they cannot be consolidated with the first action. ***Id.*** at 174. "Consolidation of suits presupposes that there are two suits to consolidate." ***Id.*** And because a wrongful-death claim "must be brought in a single suit, there cannot be two suits to consolidate." ***Id.***

9

¶24.   In *Long*, this meant the second set of beneficiaries could not consolidate their action with the first-filed.  But they could join the first action.  *See id.*  Here, this means Davis could not "combine" all four lawsuits, for that would presuppose there were four suits to combine. But as the trial court correctly found, Lawsuits 2, 3, and 4 were "of no effect and [had to] be dismissed."  *Id.*  So there was nothing to combine.  *See id.*

¶25.   Instead, any claims against Dr. Blaylock and DRMC had to be brought in Lawsuit 1, which Davis's counsel acknowledged was still pending.  But Lawsuit 1 is not part of this appeal.  So the issue of whether Davis could amend her complaint in Lawsuit 1 to add her claims against Blaylock and DRMC is not before this Court.

¶26.   All that is before us in this consolidated appeal is the decision by the trial court to dismiss Lawsuits 2, 3, and 4.  Because the trial court properly relied on *Long*, we find no error in that decision.

> **II.    Despite the different notice requirements in Section 15-1-36 and Section 11-46-11, Davis did not have to file different lawsuits at different times.**

¶27.   Alternatively, Davis tries to get around *Long*'s clear holding by asserting she was "legally obligated to file four separate lawsuits."  This obligation to file multiple suits, she claims, was due to the fact her claims against DRMC, a community hospital, were subject to a different statute of limitations and presuit-notice requirement than her claims against private physicians Dr. Barber and Dr. Blaylock.

¶28.   For wrongful-death actions, the statute of limitations for the alleged cause of death applies—in this case medical negligence.  *See Jenkins v. Pensacola Health Trust, Inc.*, 933

10

So. 2d 923, 926 (Miss. 2006), *as modified by* **Saul ex rel. Heirs of Cook v. S. Cent. Reg'l Med. Ctr., Inc.**, 25 So. 3d 1037 (Miss. 2010). Mississippi Code Section 15-1-36 governs medical negligence claims. It provides a two-year statute of limitations but requires written notice of the intent to sue at least sixty days in advance. Miss. Code Ann. § 15-1-36(2), (15) (Rev. 2012). But medical-negligence claims against a state-sponsored hospital like DRMC are governed by the Mississippi Tort Claims Act (MTCA). And the MTCA has a shorter, one-year statute of limitations and requires presuit notice to be given at least ninety days before filing suit. Miss. Code Ann. § 11-46-11(3)(a), (b) (Rev. 2012). So Davis's claims against private physicians Dr. Barber and Dr. Blaylock had a longer, two-year statute of limitations but a shorter, sixty-day presuit-notice period. And Davis's claims against DRMC had a shorter, one-year statute of limitations—subject to tolling under Section 11-46-11(3)(a) and (b)[4]—but a longer, ninety-day presuit-notice period.

¶29. While the application of two different statutes of limitations and presuit-notice periods made calculating the window in which to file her lawsuit more complicated, it did not prevent Davis from filing all her claims at the same time in one wrongful-death lawsuit. And by no means was she "obligated" to file four separate suit for the same alleged wrongful death. Instead, based on when Richard died and when Davis filed her presuit-notice letters,

---

[4] *See* **Copiah Cty. Sch. Dist. v. Buckner**, 61 So. 3d 162, 169 (Miss. 2011) (citing **Page v. Univ. of S. Miss.**, 878 So. 2d 1003, 1005 (Miss. 2004) (explaining how to calculate MTCA's statute of limitations based on Section 11-46-11(3)'s tolling provisions).

Davis had a three-and-a-half-month period—from December 10, 2014, to March 25, 2015—in which she could have filed all her claims in one lawsuit.[5]

¶30.   Davis did not wait for this window to open.  Instead, Davis chose to go ahead and file Lawsuit 1 on November 4, 2014—the day after the notice period for her claims against Dr. Barber had ended—even though the presuit-notices period had not expired for Dr. Blaylock or DRMC.  But contrary to Davis's contention, nothing in Section 15-1-36 obligated her to file her complaint against Dr. Barber as soon as the sixty-day notice period ended.  Instead, the statute required her to give "*at least* sixty (60) days' notice."  Miss. Code Ann. § 15-1-

---

[5] Richard's death on September 21, 2013, triggered both Section 11-46-11(3)'s one-year statute of limitations and Section 15-1-36(2)'s two-year statute of limitations. *See Saul*, 25 So. 3d at 1046 (holding that "the statute of limitations for the single cause of action that may be brought pursuant to the wrongful death statute cannot begin to run until the date of death").

 The first presuit notice Davis sent was to DRMC on August 18, 2014.  Because she had to wait at least ninety days to file an action based on the claims in her presuit notice letter, the earliest she could sue DRMC was November 18, 2014.  *See* Miss. Code Ann. § 11-46-11(1).  Davis filed Lawsuit 3 the next day, on November 19, 2014.  But due to the tolling provisions of Section 11-46-11(3)(a) and (b), the statute of limitations for these claims did not run until March 25, 2015.  *See* Miss. Code Ann. § 11-46-11(3); *see also Buckner*, 61 So. 3d at 169 (explaining how tolling provisions apply).

Davis next sent a presuit-notice letter to Dr. Barber on September 2, 2014.  Because under Section 15-1-36 she had to wait at least sixty days before filing suit, the earliest she could sue him was November 3, 2014.  *See* Miss. Code Ann. § 15-1-36(15).  Davis filed Lawsuit 1 against Dr. Barber on November 4, 2014—even though the two-year statute of limitations would not run until September 21, 2015.  *See* Miss. Code Ann. § 15-1-36(2).

Davis then sent another presuit-notice letter to DRMC on September 11, 2014.  To the extent this letter made different allegations than her first, she had to wait until December 10, 2014, to file these claims.  Davis filed Lawsuit 4 on December 10, 2014.  But as with her other claims against DRMC, the statute of limitations would not run until March 24, 2015.

Finally, Davis sent her fourth presuit-notice letter to Dr. Blaylock on September 19, 2014.  This meant she had between November 18, 2014, and September 21, 2015, to file her claims against him.  Davis filed Lawsuit 2 on November 19, 2014—the *same day* she filed Lawsuit 3.

12

36(15) (emphasis added). So Davis could have waited until December 10, 2014—the earliest she could have filed *all* her claims—and still have been in compliance with both Section 15-1-36(15)'s presuit-notice requirement *and* Section 15-1-36(1)'s two-year statute of limitations.[6]

¶31.    The same is true for Lawsuit 2. While the earliest she could file was on November 18, 2014, she was not obligated under Section 15-1-36 to file her second lawsuit the next day, on November 19, 2014. Nor did Section 15-1-36 prevent her from amending her complaint in Lawsuit 1—an issue outside the scope of this appeal.

¶32.    Neither did Section 11-46-11 compel Davis to file Lawsuit 3 on November 19, 2014, the same day she filed Lawsuit 2. Like Section 15-1-36, notice under Section 11-46-11 must be given "*at least* ninety (90) days before initiating suit." Miss. Code Ann. § 11-46-11(1) (emphasis added). But Davis's notice served to toll the statute of limitations ninety-five days—or until December 25, 2014. Miss. Code Ann. § 11-46-11(3)(a). And then, by operation of Section 11-46-11(3)(b), she had an additional ninety days—or until March 25, 2015—to file suit. *See **Buckner***, 61 So. 3d at 169. So Davis could have waited to file all her claims on December 10, 2014, and fully complied with both statutes.

---

[6] The only time a plaintiff bringing a medical-negligence claim must file her suit as soon as the sixty-day presuit notice window closes is when "the notice is served *within* sixty (60) days prior to the expiration of the applicable statute of limitations." Miss. Code Ann. § 15-1-36(15) (emphasis added). That is because, in such a scenario, the statute of limitations is tolled only for sixty days. *Id.* But here, Davis filed her presuit notice more than a year before the two-year statute of limitations expired, so Section 15-1-36(15)'s tolling provision did not come into play.

¶33. In other words, there is no conflict between *Long*'s clear holding that Davis could have only one pending wrongful-death lawsuit and Sections 15-1-36's and 11-46-11's differing statute of limitations and presuit-notice requirements.

**Conclusion**

¶34. Because *Long* clearly holds that Lawsuits 2, 3, and 4 were "of no effect" while Lawsuit 1 was still pending, the trial court did not err in dismissing each of these subsequently filed wrongful-death suits. Nor did it err in finding Davis's motion to amend and combine was moot, as it had been filed in the ineffective Lawsuits 3 and 4. Thus, we affirm the judgments of the trial courts, which dismissed the three subsequently filed wrongful-death suits.

¶35. **AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., KITCHENS, COLEMAN AND BEAM, JJ., CONCUR. RANDOLPH, P.J., KING AND CHAMBERLIN, JJ., NOT PARTICIPATING.**

14